## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

NORTHEAST ILLINOIS REGIONAL
COMMUTER RAILROAD CORP.,

Plaintiff,

v.

JUDLAU CONTRACTING, INC.,

Defendant.

Case No. 20-cv-02901

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Northeast Illinois Regional Commuter Railroad Corp. ("Metra")
awarded a construction project bid to Defendant Judlau. Judlau completed the project
more than two years after the contractual completion date, leading to Metra's suit
against Judlau for breach of contract. [49]. Judlau filed a six-count counterclaim
alleging breach of contract and violation of the Local Government Prompt Pay Act.
[62]. Before the Court now are the parties' cross-motions for partial summary
judgment on issues related solely to damages. [135] [139]. For the reasons stated
below, Judlau's motion for partial summary judgment [135] is granted in part and
denied in part. Metra's motion for partial summary judgment [139] is granted in part
and denied in part.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

1

A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp*., 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

When cross-motions for summary judgment are filed, the Court construes all facts and draws all reasonable inferences in favor of the party against whom the motion was filed. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 361 (7th Cir. 2017). The Court treats the motions "separately in determining whether

judgment should be entered in accordance with Rule 56." *Marcatante v. City of Chi.*, 657 F.3d 433, 439 (7th Cir. 2011). *See also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416 (7th Cir. 2019) ("Each cross movant for summary judgment bears a respective burden to show no issue of material fact with respect to the claim.").

## BACKGROUND[1]

Metra is an Illinois public corporation, overseen by the state Regional Transit Authority, that owns and operates commuter rail service in northeastern Illinois. PRSOF ¶ 2. Judlau is a New York-based contractor in the business of construction projects for private and municipal entities. *Id.* ¶ 1. On September 28, 2017, Metra awarded Judlau a contract to demolish, repair, and replace rail line tracks and 11 bridges on the Metra Union Pacific North Line between Addison Street and Balmoral Avenue in the City of Chicago. *Id.* ¶¶ 3, 5, 6. The formal Notice of Award contained a contract drafted and fully executed by Metra as contract No. K72374 in the amount of $17,235,000.00 for the construction of 11 bridges and related work. *Id.* The contract required Judlau to complete the project within 30 months of the Notice of Award, on March 28, 2020. *Id.* ¶10. Metra claims the Project was completed on September 10, 2021. *Id.* ¶11.The parties agree that substantial completion of the project was delayed by over 500 days. PSRAF ¶ 3.

---

[1] These facts are taken from Defendant Judlau's Rule 56.1 statements of fact [137] (DSOF) and Plaintiff Metra's response to Judlau's statement of facts, [145] (PSROF); Metra's statements of facts [140] (PSOF) and Judlau's response to Metra's statement of facts (DSROF) [148]; Judlau's statement of additional material facts (DSAF) [148] and Metra's response to Judlau's statement of additional facts (PSRAF) [150]. The facts are undisputed unless otherwise noted.

Both parties also agree that the delays were caused in part by problems with permits and review processes overseen by the City of Chicago. PSRAF ¶ 3. Judlau sought a 562-day extension on the project that Metra denied. *Id*. ¶ 16. The parties dispute who bears overall responsibility for the delayed completion. *Id*. ¶3. Metra claims every day of delay is attributable to Judlau and that the delays caused Metra to incur damages. DSOF ¶¶ 12-14.

Metra now seeks actual damages for costs it incurred while Judlau completed the project. [1]. It is undisputed that due to delay, Metra withheld $692,955.00 as liquidated damages from its payments to Judlau. DSOF ¶¶ 13, 30-31. Judlau, meanwhile, countersued Metra for delay damages it incurred. [62]. One such delay was Metra's failure to initiate geotechnical design review with the City's Office of Underground Construction. *Id.*; DSAF ¶ 11.

In addition to delayed completion damages, Judlau also seeks damages in the form of interest on late payments. Judlau submitted certified payment applications monthly to Metra. PSOF ¶12. Over the course of the project, Judlau made 24 payment applications. PSRAF ¶ 32. Pursuant to the contract, Metra paid Judlau funds awarded by the Illinois Department of Transportation (IDOT) and the Federal Transit Administration (FTA). PSOF ¶¶ 14-15. The parties dispute whether Metra made timely payments under the contract and/or the Local Government Prompt Payment Act, 50 ILCS § 505. DSROF ¶ 14.

## ANALYSIS

### I. Judlau's Motion for Partial Summary Judgment on Liquidated Damages

Judlau moves for partial summary judgment regarding the amount of damages that Metra can recover. Judlau disputes liability, but in the event it is found in breach, it asserts that the liquidated damages provision in the contract caps Metra's recovery of damages for delay at a per diem rate.

### a. Liquidated Damages Clauses are Enforceable

Section 4.9 of the contract states:

> LIQUIDATED DAMAGES. Time is of the essence of this Contract. Should the Contractor neglect, refuse, or fail to complete the work under this Contract within the time agreed upon, and in view of the difficulty of estimating with exactness damages caused by such delay, Metra shall have the right to charge the Contractor the sum of $1,305.00 per day for each and every calendar day that such work under this contract is delayed in its completion beyond the specified time, as liquidated damages and not a penalty.

[62-1] at 11.

In Illinois, courts interpret the meaning of unambiguous terms of a contract as a matter of law. *See Air Safety Inc. v. Teachers Realty Corp.*, 185 Ill.2d 457, 236 Ill.Dec. 8, 706 N.E.2d 882, 884 (1999); *InsureOne Indep. Ins. Agency, LLC v. Hallberg*, 976 N.E.2d 1014, 1037 (Ill. App. Ct. 2012). "Traditional principles of contract interpretation require a court, when construing a contract, to ascertain and give effect to the intent of the parties." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 966 (Ill.App.Ct. 2004) (citing *Eichengreen v. Rollins, Inc.*, 757 N.E.2d 952 (Ill.App.Ct. 2001)). The starting point for the Court's analysis is "the language of the contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher v. Lenart*, 226 Ill. 2d 208, 874 N.E.2d 43, 50, 314 Ill. Dec. 133 (Ill. 2007); *see also Kallman v. Radioshack Corp.*, 315 F.3d 731,

5

735 (7th Cir. 2002) ("If the language of the contract unambiguously answers the question at issue, the inquiry is over.").

In addition, a liquidated damages provision predetermines the amount of damages that a non-defaulting party can recover. Liquidated damages provisions are common in construction contracts, as it can be difficult to calculate actual damages in advance of a new project. *John Hancock Life Ins. Co. v. Abbott Laboratories*, 863 F.3d 23, 43 (1st Cir. 2017) (collecting Illinois cases). Whether a liquidated damages provision is valid is a question of law. *NAR Bus. Park, LLC v. Ozark Auto. Distributors, LLC*, 430 F. Supp. 3d 443, 458 (N.D. Ill. 2019) (quoting *ICD Publications, Inc. v. Gittlitz*, 388 Ill.Dec. 618, 24 N.E.3d 898, 920 (Ill. App. Ct. 2014)).

Illinois courts uphold a liquidated damages clause as valid and enforceable if: (1) the parties intended to preemptively agree to settle damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, i.e., relating to the actual damages that might occur; and (3) actual damages would be difficult to measure at time of execution. *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 863 (7th Cir. 2020), *reh'g denied* (Sept. 4, 2020) (citing *Karimi v. 401 N. Wabash Venture, LLC*, 952 N.E.2d 1278 (Ill.App.Ct. 2011)). Here, Metra does not dispute that the liquidated damages provision satisfies this test. Metra drafted the contract and included the provision "as liquidated damages and not a penalty." [62-1] at 11. The provision itself, drafted by Metra, also acknowledged "the difficulty of estimating with exactness damages caused by such delay." *Id.*

6

Metra argues now that (1) the plain language of the contract allows Metra to choose actual or liquidated damages if it establishes a breach based on delay; (2) the damages it seeks are not based on delay; and, in the alternative, (3) the liquidated damages clause is void under Illinois law.

### b. The Contract Does Not Allow Metra to Choose Between Liquidated and Actual Damages.

Metra relies on Section 4.9's statement that "Metra shall have the *right* to charge the Contractor [liquidated damages]" to argue that it has the choice to demand liquidated damages or not. [62-1] at 11 (emphasis added). Metra then cites section Article 8.1 of the contract, which reserves Metra's "right to damages, liquidated or otherwise, arising out of any such default, and such other remedies as may be provided by the law . . ." [62-1] at 33, Article 8.1. These two provisions read together, Metra contends, preserve its ability to seek actual damages in lieu of liquidated damages. At the same time, Metra acknowledges that Illinois courts hold that provisions allowing a party *the option* between actual and liquidated damages are void and unenforceable. [146] at 7 (citing *Karimi*, 952 N.E.2d at 1287 (surveying Illinois law)). Metra suggests there is some daylight between a *right* to collect liquidated damages, as opposed to an "option," or choice between liquidated or actual damages. [146] at 6. This reasoning is unpersuasive on its face.[2]

The problem for Metra is the plain language of the contract here does *not* create an option between liquidated and actual damages. Illinois appellate courts reviewing

---

[2] The Court also notes that Metra already exercised its "right" to liquidated damages under the contract. DSOF ¶¶ 30-31.

provisions like the one here have declined to find such an option between actual and liquidated damages without explicit language to that end. *See, e.g.*, *Karimi*, 952 N.E.2d at 1288 (upholding liquidated damages clause where "no provision in the agreement allows defendants *the option* to pursue actual damages in case of plaintiffs' breach") (emphasis added); *Morris v. Flores*, 174 Ill. App. 3d 504, 507 (2d Dist. 1988) (same); *In re Polo Builders, Inc.*, 388 B.R. 338, 366 (Bankr. N.D. Ill. 2008) ("[T]he liquidated damages clause is not unenforceable because it does not by its terms provide a specified option between liquidated damages or actual damages.").

The plain language of Metra's contract, the one it drafted, limits Metra to a fixed daily amount of liquidated damages for delay. In *N. Illinois Gas C. v. Energy Co-op Inc.*, the Illinois appellate court confronted a liquidated damages provision like the one here that required the defaulting party to pay a set rate "upon demand of the party not in default." 461 N.E.2d 1049, 1053 (Ill.App.Ct. 1984). The court held that language barred the non-defaulting party from seeking actual damages. *Id.*

> Failure to demand a contractual right does not create rights greater than those bargained for. A liquidated damages clause is the agreement of the parties as to the amount of damages which must be paid in the event of default. Proof of liability is all that is required to entitle the injured party to recover the liquidated amount. If the non-defaulting party does not wish to demand this amount, he will not be forced to do so. *But this does not create the right to seek a greater measure of damages than the amount bargained for.*

*Id.* (internal citations omitted) (emphasis added); *accord Siegel v. Levy Org. Dev. Co., Inc.*, 538 N.E.2d 715 (Ill.App.Ct. 1989); *E. Elec. Apparatus Repair Co., Inc. v. Jefferson Smurfit Corp.*, 91-JPG-690, 1994 WL 419851, at *3 (S.D. Ill. June 10, 1994), *aff'd*, 29 F.3d 306 (7th Cir. 1994) ("The defendant bargained for an amount of liquidated

8

damages in the event there was a delay, and EE paid that amount. [Defendant] cannot now be heard to say that it made a bad bargain and did not request a high enough amount.").

This interpretation of the liquidated damages provision does not, as Metra argues, render meaningless Article 8.1's reservation of Metra's "other remedies as may be provided by the law." Metra may seek money damages for non-delay related breaches and seek remedies other than money damages such as injunctive or declaratory relief. *See Morris*, 174 Ill.App.3d at 507. In fact, if Metra "is entitled to recover *all* damages including damages resulting from delay . . . the liquidated damages provision is rendered almost meaningless." *Jefferson Smurfit*, 29 F.3d 306, at 308. Metra bargained for an amount of liquidated damages in case of delay and has already charged Judlau for that amount. It would render that provision of the contract meaningless to allow Metra to seek actual damages for losses stemming from delay.

### c.  Metra's Damages are Largely Due to Delay

Metra next argues that the following categories of claimed damages do not relate to delay and are therefore not covered by the liquidated damages provision. Judlau disagrees.[3]

- Union Pacific Railroad additional costs for flagging and engineering (two line items)
- Additional resident engineering costs
- Additional V3 engineering costs

---

[3] Judlau does not challenge the following damages as barred by the liquidated damaged clause: CSL Testing ($25,101.68), field office credit ($89,140), additional review ($50,960.17), and subcontractor mechanic liens ($937,042.69). *See* [146] at 3; PSROF ¶ 16. Metra will be free to seek actual damages for these costs should it establish breach on the part of Judlau.

- IHC Damages
- Storage of structural steel

As an initial matter, the Illinois Supreme Court takes a broad view of delay damages as any "damages caused by delay in the completion of a project," including "additional labor and supervision costs" and "overhead and lost profits." *Bates & Rogers Const. Corp. v. Greeley & Hansen*, 109 Ill. 2d 225, 230 (1985). Such damages are defined by their "causal link" to the delay. *Chicago Coll. Of Osteopathic Med. v. George A. Fuller Co.*, 776 F.2d 198, 206 (7th Cir. 1985).

Metra admitted during discovery that both itemized costs of $161,805 and $738,661 for additional Union Pacific Railroad flagging and engineering stemmed from Judlau's "extended time on the project." PSROF ¶¶ 22-23, 28-29. Metra linked the additional engineering costs of $626,486.77 from its own resident engineers and $535.585.22 from construction management firm V3 to inefficiencies caused by Judlau's delay. *Id.* ¶¶ 24-27. Metra's project manager Joseph Ott testified in his deposition that the increased costs were due to Metra and V3 engineers going off-schedule in managing Judlau's project alongside another contractor's project. *Id.* Those additional labor and inefficiency costs accordingly flowed from Judlau's project delay. The IHC damages of $1,512,039.94 similarly involved additional labor and inefficiency costs resulting from Judlau's failure to turnover railroad tracks on time, thereby interfering with another contractor (IHC)'s work on a separate project. *Id.* ¶¶ 19-21. Though Metra incurred these costs on a different construction project, Metra characterized them as a direct result of Judlau's failure to meet its contractual deadline and track turnover date. *Id. See Smurfit*, 29 F.3d at 308 ("Nothing in the

10

[liquidated damages] provision indicates that its application is limited to damages caused by the breach of a particular promise. Rather the provision liquidates a category of damages . . . without regard to the cause of the delay.") In light of this undisputed evidence, the Court finds no reasonable jury could find that these damages fall anywhere but under the "delay damages" umbrella.

One category of damages remains. There is a genuine dispute of material fact as to whether Judlau's delay caused Metra to suffer damages in the amount of $284,506.21 for the cost of storing steel. PSROF ¶ 17. These storage costs accrued during the time Judlau took to finish the project beyond the contractual completion date. *Id.* ¶ 18. Metra denies that the steel storage costs were exclusively caused by delay, *id.*, and instead presents evidence that these costs stemmed from a dispute between the parties as to who should bear storage costs. *Id.* Ott, the project manager, testified that the contract assigned steel storage costs to Judlau starting in December 2017. ([145-2], Dep. of Joseph Ott 12/16/23, 168:1-7). Viewing this evidence in the light most favorable to Metra, a reasonable factfinder could find that the steel storage costs were not the result of delay, but a contractual obligation owed by Judlau for the duration of the contract. It follows that a reasonable factfinder could determine that the liquidated damages provision is not applicable to this set of damages. Metra is permitted to seek actual damages for these costs.

### d. The Liquidated Damages Clause is Not Void

Metra's final argument against partial summary judgment arises from Judlau's counterclaims against Metra for delay. In cases involving mutual delay, Metra contends, Illinois law prescribes annulment of liquidated damages. Metra cites to

*Calumet Const. Corp. v. Metro. Sanitary Dist. Of Greater Chicago*, 422, 533 N.E.2d 453, 458 (Ill.App.Ct. 1988) to support this argument. *Calumet*, however, moves away from total abrogation in the case of mutual delay toward a "modern" approach of apportioning liquidated damages between both parties. *Id.* Moreover, *Calumet* makes clear that adjusting liquidated damages only occurs "if the evidence shows that the [party benefitting from the liquidated damages provision] substantially contributed to the delay so as to render the provision . . .void." *Id.* Here, both parties concede that there is a genuine issue of material fact as to whether either side breached. Without any "substantial evidence" of breach, the Court declines to consider the annulment of the liquidated damages provision.

The liquidated damages provision is valid and enforceable, and forecloses Metra's additional recovery of the following damages: Union Pacific Railroad additional costs for flagging and engineering; additional resident engineering costs; additional V3 engineering costs; and IHC Damages. Should Metra establish Judlau breached, Metra may seek actual damages for costs associated with steel storage, CSL Testing, field office credit, additional review, and subcontractor liens.

## II. Metra's Motion for Partial Summary Judgment

Judlau filed a six-count counterclaim alleging breach of contract claims in Counts I, II, IV, and V, improper notice to proceed in Count III and violation of the Local Government Prompt Pay Act in Count VI. Metra brings a motion for partial summary judgment as to Counts I, II, IV, and VI.[4] Like Judlau's motion for

---

[4] The allegations contained in Counts III and V shall be determined by the finder of fact.

summary judgment, Metra's motion is limited to arguing about available damages. Specifically, Metra raises the contract's "no damages for delay" clause to argue that Judlau cannot recover any damages for the delays alleged in Count I, II and IV. Metra then argues that Judlau has failed to provide any evidentiary support for its assertion that Metra violated the Local Government Prompt Pay Act.

### a. "No Damages for Delay" Clause and Exceptions

Judlau asserts a breach of contract under Section 9 of the contract which addresses unavoidable delays and requires Metra to grant extensions for "reasonable delay." Metra seeks summary judgment on these counts arguing that the language in Section 9.2 prevents Judlau from damages caused by project delays. The contract reads as follows.

> **Section 9 Unavoidable Delays**. If completion of the work under this Contract should be unavoidably delayed, Metra shall extend the time for completion of this Contract for the determined number of days of excusable delay. A delay is unavoidable only if the delay was not reasonably expected to occur in connection with or during the Contractor's performance; was not caused directly or substantially by acts, omissions, negligence, or mistakes of the Contractor, the Contractor's suppliers, or their agents; was substantial and caused the Contractor to miss delivery dates; and the Contractor could not adequately have guarded against the delay by Contractual or legal means.

> **Section 9.2 Request for Extension.** The Contractor agrees to supply, as soon as such data is available, any reasonable proof that is required by Metra to make a decision on any request for extension. Metra shall examine the request for extension and any documents supplied by the Contractor and shall determine if the Contractor is entitled to an extension and the duration of such extension, or is subject to Liquidated Damages, or termination for default, as set forth elsewhere in the Contract. Metra shall notify the Contractor of the decision in writing.

> It is expressly understood and agreed that the Contractor shall not be entitled to damages or compensation and shall not be reimbursed for losses on account of delays resulting from any cause under this provision.

13

[62-1] at 33-34.

Judlau asserts an unavoidable delay arose out of the Existing Facility Protection ("EFP") review process overseen by the Chicago Department of Transportation's Office of Underground Coordination (OUC). DSAF ¶ 3-4. CDOT only issues permits to construction projects affecting the City's underground infrastructure following a successful EFP process. *Id.* ¶¶4-5. Judlau alleges that Metra (1) failed to initiate the necessary EFP review with the OUC in a timely manner before awarding the bids to Judlau, (2) did not inform Judlau during the bid phase that the EFP process was not in motion, and (3) submitted inaccurate drawings and documents to the OUC, later insisting that Judlau supply corrected copies. DSAF ¶¶ 11-12, 15. Judlau also alleges several delays caused by OUC staff during the EFP review including the retirement of the most knowledgeable staff member, extended vacation by critical staff members, and excessive negative feedback on proposals. *Id.* ¶ 15. Metra argues that Judlau cannot seek damages by arising out of these delays because of Article 9.

"No damages for delay" clauses are enforceable in Illinois, though they are construed strictly against those who seek their benefit. *J & B Steel Contractors v. C. Iber & Sons, Inc.*, 162 Ill.2d 265, 276, 642 N.E.2d 1215 (1994). Illinois courts recognize the following exceptions to such clauses: delay caused by bad faith; delay not within the parties' contemplation at the time of execution; delay of "unreasonable duration"; and delay attributable to "inexcusable ignorance or incompetence of engineer." *Id.*

Judlau responds that Metra's and OUC's delays in the EFP process are not covered by the "no damages for delay" clause because they were outside the contemplation of the parties. "Reasonable foreseeability is the touchstone of this exception," *J & B Steel*, 162 Ill.2d at 278, 642 N.E.2d at 1222, and the Court must take "[t]he contracting parties' relationship and its objectives and attendant circumstances" into account. *Id.* Only those delays that are unforeseeable or not "naturally arising from performance of the work itself or the subject of the contract come within the exception." *Id.* The Court disagrees that the parties did not contemplate delays in the permitting process. The contract itself establishes that the parties, a sophisticated construction contractor and a large public transportation provider, knew the project required a multifaceted permitting process involving state and municipal authorities. [62-1] at 3 (Contract Ex. C, Section 6) ("Permits and licenses of any nature necessary for the prosecution of the work shall be secured and paid for by the Contractor"); [49-4] at 6 (Addendum No. 2) ("The Contractor is responsible for determining the required permits to construct the project."). In addition, the contract's frequent efforts to address "delays" establishes these sophisticated parties' anticipation of (and bargaining for) this eventuality. *See* [62-1]. Moreover, Illinois courts recognize "long delays and increased costs . . . as inherent in any construction project.'" *Mellon Stuart Const., Inc. v. Metro. Water Reclamation Dist. of Chicago*, 94 C 1915, 1995 WL 124133, at *5 (N.D. Ill. Mar. 20, 1995) (quoting *J.F. Edwards Constr. Co. v. Ill. State Hwy Auth.*, 340 N.E.2d 572, 574

(Ill.App.Ct.1975)); *see also U.S. ex rel. Alexander Gammie Associates v. Blinderman Const. Co.*, 99 C 4498, 2000 WL 1308084, at *3 (N.D. Ill. Sept. 14, 2000).

Next, Judlau argues that Metra's delays in initiating the EFP process and lack of engagement therein were of an unreasonable duration. The length of delay does not by itself establish unreasonableness, *Asset Recovery Contracting, LLC v. Walsh Const. Co. of Illinois*, 980 N.E.2d 708, 731 (Ill.App.Ct. 2012).[5] Judlau does not assert why the length was unreasonable. It is also undisputed that Judlau continued to perform under the contract until completion of the project. "Parties to an agreement may waive delays in performance by conduct which indicates an intention to regard the agreement as still in force and effect." *Id.* (quoting *Bank of Wheaton v. Village of Itasca*, 533 N.E.2d 553 (Ill.App.Ct. 1989). Judlau thus fails to create a genuine issue of material fact that Metra's delay regarding the EFP process was of an unreasonable length.

Finally, Judlau contends that Metra intentionally hindered the EFP review process in bad faith, excusing the resulting delays from the "no damages for delay" clause. This, too, lacks an adequate evidentiary showing. The bar to show a bad faith delay is high. "More than procrastination is required before a case of bad faith is made out . . . delay . . . is what the [defaulting party] bargained for and is not tantamount to bad faith." *Unicon Mgmt. Corp. v. City of Chicago*, 404 F.2d 627, 630 (7th Cir.

---

[5] Judlau relies on its expert Dr. Sashi Mahtani, who performed a critical path analysis to conclude that Metra and OUC's inaction and/or interference with permitting caused 501 days of "excusable and compensable delay" that was "of unreasonable duration." DSAF ¶ 23. Dr. Mahtani's opinions that the "delay was not contemplated, as best as [he] can determine, by the parties" and that "for a project of this length and relative size, this amount of delay is of an unreasonable duration," *id.*, Ex. B, p. 19, are unsupported by facts.

1968); *see Gust K. Newberg, Inc. v. Illinois State Toll Highway Auth.*, 506 N.E.2d 658, 665 (Ill.App.Ct. 1987) (declining to extend bad faith exception against state transit authority that delayed obtaining right of way parcels of land). Judlau argues that Metra's failure to initiate and/or meaningfully participate in the EFP process was in bad faith because owners typically take responsibility for the review process. DSAF ¶11. Metra convincingly responds that the contract required Judlau to apply for and manage all permits, including EFP review. PSRAF ¶ 11 (citing [62-1] at 223).

While there may be a genuine issue of material fact as to who was ultimately responsible for the EFP review, Judlau does not present evidence showing that Metra neglected the process in bad faith. EFP approval depended on Judlau as the awarded Contractor, and the OUC only *recommended* that Metra begin the process early in the bid process. [96-8].[6] There is no evidence that Metra intentionally omitted its lack of progress during the bid process, as opposed to assuming that Judlau would handle all permits, including the EFP review. *See* PSRAF ¶ 11. No reasonable jury could determine Metra acted in bad faith. Rather, Metra's project manager testified that Metra engineers were "trying to improve the permit process, to speed it up as much as we can at this point after it's been in process for a year." [150-1] 146:3-7. In view of this evidence, the Court declines to extend a narrow judicially created exception to the "no damages for delay" clause.

### b. Metra's Denial of Extensions

---

[6] Judlau repeatedly refers to OUC regulations that purportedly require Metra to initiate the EFP process in the design phase of the project. DSAF¶ 11. This runs counter, however, to the OUC representative's understanding of the EFP timeline. DSAF, Ex. E. (Stuck Dep.), 168:1-169:6.

Judlau also takes issue with Metra's denial of requests for extension, arguing that Section 9 entitles Judlau to extensions for excusable delay and that Metra's refusals amount to breach of contract that excuses the "no damages for delay" clause. This reading of the contract contradicts Section 9.2 that provides "Metra shall examine the request for extension . . . and shall determine if the Contractor is entitled to an extension and the duration of such extension." [62-1] at 34. According to the plain language of the contract, Metra *shall* determine if the contractor is entitled to an extension. There is no basis in the contract for the Court to substitute its judgment of excusable delay for Metra's. "The rights of parties to a contract are limited by the terms expressed in the contract; a court will not rewrite a contract to suit one of the parties but will enforce the terms as written." *Wright v. Chicago Title Ins. Co.*, 554 N.E.2d 511, 514 (Ill.App.Ct. 1990). This provision does not entitle Judlau to extensions as a matter of course, nor does it allow the Court or a finder of fact to second guess Metra's decision regarding extensions.

Judlau attempts a last-ditch effort to escape the "no damages for delay clause" by casting its delay damages as "acceleration damages" instead. "Acceleration occurs when a contractor is forced to perform the work in a shorter period of time than is called for in the contract." *Fru-Con Corp. v. State*, 50 Ill. Ct. Cl. 50, 93 (1996). A contractor may also recover for constructive acceleration, or when it is held to the original completion date without regard for excusable delays. *Id.*; *Contracting & Material Co. v. City of Chicago*, 314 N.E.2d 598, 604 (Ill.App.Ct. 1974). To win acceleration damages, a contractor must show: 1) it faced excusable

18

delays that warranted an extension of time; 2) it has specifically requested an extension; 3) the contracting party failed to grant the extensions; 4) the contracting party caused the contractor to complete the work within the original contract period; and 5) that the contractor accelerated its performance. *Id.* Here, Judlau cannot recast its delay damages as acceleration damages because it did not complete the project within the original deadline under the contract.

### c. Delays Alleged in Counts II and IV

Judlau also asserts breach of contract claims in Count II based on delays cause by unscheduled rail traffic by Union Pacific Railroad and in Count IV based on the delayed delivery and possession of structural steel. [62-1] ¶¶ 157-174. As the Court found *supra,* pursuant to Section 9.2, Judlau is not permitted to seek damages that are reasonably foreseeable. Considering the plain language in the contract, no reasonable jury could award damages to Judlau, assuming Metra was found in breach on these counts. The court grants summary judgment to Metra as to these Count I, II and IV of the counterclaim.

### d. Local Government Prompt Payment Act

Metra also moves for summary judgment on Count VI of Judlau's amended counterclaim. In Count VI, Judlau seeks remedies under the Local Government Prompt Payment Act, 50 ILCS § 505, for 17 late payments from Metra. [62] ¶¶194-200. Judlau alleges the interest on these payments amounted to $257,479.77.[7] *Id.*, PSOF ¶ 11. Metra disputes whether the Act covers most of the payments and whether

---

[7] The Court does not consider the accuracy of the damages calculation in this order.

the payments were late. For the following reasons, the Court finds that there is a triable issue of material fact as to whether most of Metra's payments complied with the contract or the Local Government Prompt Pay Act.

The Local Government Prompt Payment Act (LGPPA) sets deadlines for local government units to satisfy charges from vendors and contractors. 50 ILCS § 505. Covered government officials must approve charges within 30 days of the receipt of a bill or within 30 days of the date on which goods or services are received, whichever is later. 50 ILCS §§ 505/2, 3. Then, within 30 days of approval, the government official must tender payment. Late payments are penalized with a 1% interest penalty for each month that payment is not made. 50 ILCS § 505/4. Critically, a longer contractual timeline supersedes the statutory time periods. 50 ILCS § 505/6.

At the outset, the parties dispute how many of Metra's payments to Judlau are included in Judlau's counterclaim. Judlau identified seventeen (17) payments in its amended counterclaim, [62] ¶¶ 198-200, but now attempts to shoehorn into Count VI seven (7) additional payments Metra made after the counterclaim was filed. DSAF ¶ 32; [147] at 14. Judlau argues that the payments specified in its amended counterclaim were mere "examples" of Metra's LGGPA violations. *Id.* The Court is not convinced. In the amended counterclaim, Judlau identified certain payments and specified a dollar amount of interest payments that form the basis of Metra's potential liability. [62] ¶198. As Metra points out, Judlau alleges that the new payments were approved and remitted in 2021, yet Judlau never requested leave to amend the counterclaim before the close of discovery. Though district courts "retain[] discretion

20

to treat new claims presented for the first time in briefing as a constructive motion to amend," *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 490 (7th Cir. 2023), it is "rarely . . . appropriate to do so." *Id.* The Court declines to exercise its discretion and will confine its analysis to the seventeen (17) payments specified in Judlau's amended counterclaim.

Of those payments, it is undisputed that payments 2 through 15 were funded by the Illinois Department of Transportation (IDOT), while payments 16 and 17 were funded by the Federal Transit Administration (FTA). PSOF ¶ 14. The parties also do not dispute that Section 3.1 of the contract,[8] which set a deadline for Metra to pay Judlau within five days from the receipt of funds from IDOT, supersedes the LGPPA timelines for payments 2-15. The LGPPA thus applies only to the payments 16 and 17 funded by the FTA.

Judlau argues that evidentiary support provided by Metra lacks key underlying information. The Court agrees. Metra relied on a demonstrative exhibit compiled by Mr. Habib Ismail, the director of grant implementation at Metra. [144].[9] The exhibit was described by Mr. Ismail as a "summary of payment applications 2-17 as submitted by Judlau as well as the date Metra received funding from the IDOT *or RTA* and the dates Metra remitted payments to Judlau . . ." [144] ¶14 (emphasis

---

[8] Section 3.1 reads: "PROGRESS PAYMENTS. Contractor [Judlau] shall submit certified estimates to Metra on or about the first day of each month during the progress of the work. Metra will pay on or about five (5) days from the receipt of funds from the Illinois Department of Transportation ("IDOT")." [62-1] at 5.

[9] Mr. Ismail's Declaration and the attached demonstrative chart, [144], are submitted in support of Metra's motion for summary judgment and Local Rule 56.1 statement of undisputed facts.

added). Charts and summaries may be used to prove the content of voluminous records, Fed. R. Evid. 1006, but parties must be able to produce the data and documents underlying the summary. *Last Atlantis Capital LLC v. AGS Specialist Partners*, 262 F. Supp. 3d 641, 679 (N.D. Ill. 2017).

To this end, Metra attaches to Ismail's chart "check remittance" documents and bank statements that trace the flow of money *from RTA to Metra* and, for some payment periods, from Metra to Judlau. [144] 6-74. But the contract requires Metra to pay Judlau "five (5) days from the receipt of funds from the Illinois Department of Transportation ("IDOT")." [62-1] at 5. Neither the documents attached to Ismail's chart nor the chart itself indicate when *Metra* itself received the funds from IDOT. The documents only indicate when Metra received the funds from RTA, which is not a relevant inquiry under the terms of the contract.[10]

As to the two payments due pursuant to the LGPPA, it is undisputed that Payment 16 was not paid within the statutory period. Metra itself posits in its undisputed statement of facts that Payment 16 "was paid within 34 days of submission." [148] at ¶ 20. Metra's motion for summary judgment is denied as to Payment 16. However, it is undisputed that Payment 17 was paid within the statutory 30 days of submission. [148] at ¶ 21. Summary judgment is granted as to that payment.

---

[10] Judlau also protests that Metra does not produce evidence of dates that checks were received. Judlau itself has access to this information and provided none in response to the motion for summary judgment. The Court finds no genuine issue of triable fact on this matter.

Without adequate supporting documents, the Court cannot validate the chart or otherwise confirm that Metra paid Judlau in a manner consistent with the terms of the contract. Whether Metra paid Judlau on time for payments 2 through payments 15 and for payment 17 is a question for the jury.

## CONCLUSION

For the stated reasons, Judlau's motion for partial summary judgment [135] is granted in part and denied in part. Metra is permitted to seek actual damages for the following categories of damages: storage of structural steel, CSL Testing, field office credit, additional review, and subcontractor mechanic liens. Metra's motion for partial summary judgment [139] is also granted in part and denied in part. Judlau may not seek damages for delays but can proceed on its claim for most of the payments asserted in the amended counterclaim under the contract and the LGPPA.

E N T E R :

Dated: March 20, 2024

_____
MARY M. ROWLAND
United States District Judge